**David ANGSTADT and Barbara Angstadt, h/w, Parents and Natural Guardians of Megan ANGSTADT, a Minor, Plaintiffs**

v.

**MIDD–WEST SCHOOL DISTRICT Defendant**

No. 4:CV–02–2170.

United States District Court, M.D. Pennsylvania.

Sept. 3, 2003.

Jeffrey C. Dohrmann, Rieders Travis Humphrey Harris Waters & Waffenschmidt, Williamsport, PA, for Plaintiffs.

Alan Levin, Lewistown, PA, Michael I. Levin, Allison S. Petersen, Levin Legal Group PC, Huntingdon Valley, PA, for Defendant.

### *MEMORANDUM*

MCCLURE, District Judge.

### *BACKGROUND:*

On November 27, 2002, plaintiffs David Angstadt and Barbara Angstadt, husband and wife, acting on behalf of their minor child Megan Angstadt (Megan), commenced this action with the filing of a four-count complaint against defendant Midd–West School District (Midd–West) under 42 U.S.C. § 1983. Plaintiffs allege that Midd–West, by refusing to allow Megan, a

student at Western Pennsylvania Cyber Charter School, to practice, play and compete in interscholastic basketball, is acting in violation of her First and Fourteenth Amendment rights. Plaintiffs also bring a state claim pursuant to the court's supplemental jurisdiction, 28 U.S.C. § 1367, for a violation of the Pennsylvania Public School Code, 24 PA. CONS. STAT. ANN. §§ 1–101 *et seq.*

Along with their complaint, plaintiffs filed an application for a temporary restraining order under Federal Rule of Civil Procedure 65, alleging that Megan would suffer immediate, irreparable harm if a temporary restraining order in the form of an injunction requiring Midd–West to permit her to practice, play and compete in interscholastic basketball were not granted. By order dated November 27, 2002, we denied plaintiffs' application for a temporary restraining order as such and ordered that it would be considered as a motion for a preliminary injunction. Because plaintiffs had filed a similar complaint on January 29, 2002, and voluntarily dismissed that complaint on July 10, 2002, Chief Judge Vanaskie conducted a telephonic oral argument on December 22, 2002 to address the issue of whether the delay in bringing the instant action was sufficient to deny the motion for preliminary injunction. By order dated December 23, 2002, Chief Judge Vanaskie denied plaintiffs' motion for preliminary injunction.

Now before the court is Midd–West's motion to dismiss, which has been fully briefed. For the reasons that follow, the motion to dismiss will be granted.

## DISCUSSION:

### I. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) admits the well-pleaded allegations of the complaint but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). In reviewing a motion to dismiss under 12(b)(6), the court must accept as true all factual allegations of the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey v. Wettlin Assoc., Inc.,* 237 F.3d 270, 272 (3d Cir. 2001) (citation omitted). But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *General Motors Corp. v. New A.C. Chevrolet,* 263 F.3d 296, 333 (3d Cir.2001) (citation and internal quotation marks omitted).

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Ramadan v. Chase Manhattan Corp.,* 229 F.3d 194, 195–96 (3d Cir.2000) (citing *Alexander v. Whitman,* 114 F.3d 1392, 1398 (3d Cir. 1997)). "The issue [under Rule 12(b)(6)] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d Cir.2000) (citations and internal quotation marks omitted).

### II. STATEMENT OF FACTS

Megan was born on January 31, 1987, and is sixteen years old. Under the Pennsylvania Public School Code, Midd–West is Megan's "school district of residence."

Megan was continuously home schooled between the third and eighth grades, inclusive. During the 1999–2000 and 2000–2001 school years, Midd–West authorized and permitted Megan, as a home-schooled student, to practice, play and compete in interscholastic seventh and eighth grade basketball. As of the end of the school

year 2000–2001, Megan had successfully completed grades three through eight as a home-schooled student.

Since the beginning of the 2001–2002 school year, Megan has been enrolled as a student at the Western Pennsylvania Cyber Charter School (WPCCS). During the beginning of the 2001–2002 basketball season, Megan practiced, played and competed in at least one interscholastic basketball game for Midd–West. Thereafter, Midd–West determined that Megan does not meet the requirements that it places upon student athletes. Megan was therefore not permitted to practice, play and compete in interscholastic basketball for Midd–West for the remainder of the 2001–2002 school year or for the entire 2002–2003 school year. In addition, Midd–West will not allow Megan to participate in the extracurricular activity of open gym.

### III. DEFENDANT'S MOTION

In its motion to dismiss, Midd–West asserts that plaintiffs have not alleged any colorable constitutional claims, and, as such, Counts I, II, and III of the complaint should be dismissed. Midd–West further asserts that because Count IV of the complaint is a pendent state law claim, it should be dismissed along with plaintiffs' federal claims under 28 U.S.C. § 1367(c)(3). Alternatively, Midd–West asserts that because the claim in Count IV raises a number of novel and complex issues of Pennsylvania law and substantially predominates over plaintiffs' federal claims, we should decline to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §§ 1367(c)(1) and 1367(c)(2). We discuss each count of plaintiffs' complaint below.

### A. COUNT I—FREEDOM OF ASSOCIATION

■ In Count I of their complaint, plaintiffs allege that by refusing to allow Megan to practice, play, or compete in interscholastic basketball, Midd–West has violated plaintiffs' First Amendment right to associate with WPCCS. In its motion to dismiss, Midd–West argues that inasmuch as Megan is actually attending WPCCS, plaintiffs are, in fact, "associating" with WPCCS, and, as such, plaintiffs' claim that their right to associate has been violated is without merit. Midd–West further argues that because plaintiffs' claim is not based on their familial relationship, it is not entitled to constitutional protection. We agree that Midd–West has not stopped plaintiffs from associating with WPCCS and that the relationship between a family and a school is not an intimate association entitled to constitutional protection. We will therefore dismiss Count I of the complaint for failure to state a claim upon which relief may be granted.

Plaintiffs allege that "by placing upon Plaintiffs and Megan Angstadt unreasonable, arbitrary and capricious requirements to practice, play and compete in interscholastic basketball for Defendant, and by refusing to allow Megan Angstadt to practice, play and compete in interscholastic basketball for Defendant or participate in open gym, [Defendant has] abridged Plaintiffs' and Megan Angstadt's freedom of association with WPCCS." (Compl., Rec. Doc. No. 1, at ¶ 28.) Plaintiffs concede, however, that, as of the time the instant suit was filed, "Megan Angstadt was lawfully enrolled as a ninth grade student with [WPCCS]." (Id. at ¶ 12.) It is clear, then, that plaintiffs were, in fact, "associating" with WPCCS at the time they claim Midd–West was violating their right to associate with WPCCS. Accordingly, we find that plaintiffs' claim that Midd–West violated their right to associate with WPCCS is without merit.

■ Because an educational relationship is not entitled to constitutional protection,

we would find it appropriate to dismiss Count I of plaintiffs' complaint even if Midd–West were in some way interfering with plaintiffs' relationship with WPCCS. The Supreme Court has "afforded constitutional protection to freedom of association in two distinct senses." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 544, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987).

> First, the Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities.

*Id.* Plaintiffs' relationship with WPCCS does not fit in either protected category, and is therefore not entitled to constitutional protection.

■ Plaintiffs rely on *Rotary Int'l* for their contention that the Supreme Court "expressly included education as an intimate relationship warranting constitutional protection." (Pls.' Br. Opp'n, Rec. Doc. No. 22, at 11.) This contention, however, is in error. It is true that the Court referred, in its list of "intimate relationships to which [it has] accorded constitutional protection," *Rotary Int'l,* 481 U.S. at 545, 107 S.Ct. 1940, to "child rearing and education." *Id.* That reference, however, cites to the Court's opinion in *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Importantly, the decision in *Pierce* refers to "the liberty of parents ... to direct the upbringing and education of children under their control." *Id.* It follows that the Court's extension of constitutional protection to child rearing and education refers to the familial relationship between parents and their children. It does not extend the scope of constitutionally protected association beyond the family relationship.

For the reasons set forth above, we find that plaintiffs have failed to state a claim upon which relief may be granted as to Count I of their complaint. Count I will therefore be dismissed.

## B. COUNT II—LIBERTY OR PROPERTY INTEREST IN BASKETBALL AND OPEN GYM

In Count II of their complaint, plaintiffs claim that Megan has a Fourteenth Amendment "liberty or property interest in participating in interscholastic basketball for [Midd–West] and in open gym." (Compl., Rec. Doc. No. 1, at ¶ 34.) Plaintiffs further allege that Midd–West has deprived Megan of her "liberty or property interest" without due process of law "by placing upon [her] unreasonable arbitrary and capricious requirements to practice, play and compete in interscholastic basketball ... or participate in open gym, and by refusing to allow [her] to practice, play and compete in interscholastic basketball." (*Id.* at ¶ 35.) Plaintiffs contend that the section of the Pennsylvania Public School Code providing that "no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence" creates for Megan a property interest in participating in extracurricular activities. 24 Pa. Cons. Stat. Ann. § 17–1719–A(14).

In its motion to dismiss, Midd–West argues that there is no constitutionally protected interest in playing sports. Midd–West further argues that the section of the Public School Code upon which plaintiffs rely requires that the charter school student seeking to participate in extracurricular activities "fulfill[s] all of the requirements of participation in such activity," 24 Pa. Cons. Stat. Ann. § 17–1719–A(14), and

that plaintiffs, in their complaint, impliedly concede that Megan has not fulfilled all of the requirements to participate in interscholastic basketball or in open gym.

■ We agree that there is no constitutionally protected interest in playing sports. We further agree that Megan has not met the requirements to participate in interscholastic basketball or in open gym. We will therefore dismiss Count II of plaintiffs' complaint for failure to state a claim upon which relief may be granted.

The issue of whether there is a constitutionally protected interest in playing sports has not been considered by the Supreme Court. However, many courts that have considered the question have found that there is no clearly established right to compete or participate in extracurricular activities. *See Davenport v. Randolph County Bd. of Educ.*, 730 F.2d 1395, 1397 (11th Cir.1984) (explaining that "the privilege of participating in interscholastic activities must be deemed to fall ... outside the protection of due process") (citations omitted); *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159 (5th Cir.1980) (finding that "a student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement"); *Farver v. Bd. of Educ. of Carroll County*, 40 F.Supp.2d 323, 324 (D.Md.1999) (stating that "the Due Process Clause ... has clearly been held not to protect the interest of a child in participating in extracurricular activities (including sports)"); *Peterson v. Indep. Sch. Dist. No. 811*, 999 F.Supp. 665, 674 (D.Minn.1998) (finding that "no property or liberty interest exists in a student's participation in extracurricular activities"). Based upon the above authority, we find that, as a general proposition, there is no constitutionally protected

right to participate in extracurricular activities.

Plaintiffs contend that Megan has a statutory right under the Pennsylvania Public School Code to participate in extracurricular activities. Plaintiffs further contend that the averred statutory right forms the basis of a property interest protected by the due process clause. Indeed, "[p]laintiffs assert that Megan has a property interest in participating in extracurricular activities as long as the statutory requirements are met." (Pls.' Br. Opp'n, Rec. Doc. No. 22, at 19.) It is true that the Supreme Court has recognized that "[p]rotected interests in property are normally not created by the Constitution [but] by an independent source such as state statutes or rules entitling the citizen to certain benefits."

The provision of the Pennsylvania Public School Code under which plaintiffs contend Megan has a property interest in participation in extracurricular activities provides that

> no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

24 Pa. Cons. Stat. Ann. § 17–1719–A(14). In the instant case, plaintiffs do not allege that Megan met the requirements of participation in interscholastic basketball or in open gym. In fact, as Midd–West points out, through their assertions that Midd–West's requirements for participation in interscholastic basketball and in open gym are arbitrary and capricious, "[p]laintiffs implicitly concede that [Megan] does *not* satisfy [Midd–West's] requirements and instead attack the validity of those require-

ments ...." (Def.'s Br. Supp., Rec. Doc. No. 7, at 8.) It is clear, then, that plaintiffs' claim that Midd–West has violated Megan's Fourteenth Amendment right to due process must fail.

For the reasons set forth above, we find that plaintiffs have failed to state a claim upon which relief may be granted as to Count II of their complaint. Count II will therefore be dismissed.

### C.  COUNT III—EQUAL PROTECTION

■ In Count III of their complaint, plaintiffs allege that Midd–West has violated Megan's Fourteenth Amendment right to equal protection by placing "unreasonable, arbitrary and capricious" requirements on her before it will allow her to play interscholastic basketball or participate in open gym. (Compl., Rec. Doc. No. 1, at ¶ 41.) Plaintiffs base their equal protection claim on Megan's status as a cyber charter school student. (*Id.*) In its motion to dismiss, Midd–West asserts that its rules governing participation in extracurricular activities are rationally related to a legitimate interest, and are therefore not constitutionally suspect. We agree, and we will dismiss Count III of plaintiffs' complaint.

■ In reviewing an equal protection claim, we must first determine the appropriate standard of review. *Donatelli v. Mitchell,* 2 F.3d 508, 513 (3d Cir.1993). If the action in question does not burden a fundamental constitutional right or target a suspect or quasi-suspect class, the "challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification'." *Id.* (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Participation in extracurricular activities is not a fundamental right.

*Palmer v. Merluzzi,* 868 F.2d 90, 96 (3d Cir.1989). Further, Megan's status as a cyber charter school student does not qualify as a suspect or quasi-suspect classification. *See Janicki v. Elizabeth Forward Sch. Dist.,* 322 F.3d 788, 790 (3d Cir.2003) (explaining that suspect classifications are those based on race, alienage or national origin).

In the instant case, plaintiffs refer throughout their complaint to Midd–West's "arbitrary, capricious, and unreasonable" requirements for participation in extracurricular activities. (*See,* Compl., Rec. Doc. No. 1, at ¶¶ 17, 18, 28, 35.) Plaintiffs do not, however, specifically describe or identify those requirements. Midd–West, on the other hand, has identified those requirements that apply to all students who wish to play sports at the high school level as (1) having achieved at least the 9th grade level academically; (2) meeting the district's curriculum requirements for physical education; (3) meeting the district's all-day attendance policy; (4) maintaining passing grades, and; (5) maintaining an above-average citizenship grade. (Def.'s Reply Br. Supp., Rec. Doc. No. 23, at 11.)

In considering a motion to dismiss, a district court may generally consider only the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Third Circuit has found, however, that a district court may, when deciding a motion to dismiss, consider "a document integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment. *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir.2002). Although the requirements set forth by Midd–West in their reply brief do not appear in the complaint or in any document relied upon therein, we nonetheless find it

appropriate to consider the specific requirements. First, the Midd–West requirements for participation in interscholastic basketball are "integral to ... the complaint" in that plaintiffs refer to them throughout the document as "arbitrary, capricious, and unreasonable." (Compl., Rec. Doc. No. 1, at ¶¶ 17, 18, 28, and 35.) Moreover, it is the court's understanding that the actual requirements that Midd–West places on it student athletes are not disputed by the parties. *See Ackah v. Hershey Foods Corp.*, 236 F.Supp.2d 440, 443 (M.D.Pa.2002) (finding that a document attached to a motion may be considered by the court if the document is "(1) central to the plaintiff's claim; and (2) undisputed"). In fact, in a December 20, 2002 letter to the court, plaintiffs' counsel attaches a September 24, 2002 letter from himself to defense counsel outlining suggestions as to how Megan may satisfy the requirements set forth by Midd–West. (Pls.' Letter to Court, Rec. Doc. No. 13, at 2–5.) At no point in the letter does plaintiffs' counsel dispute that the requirements are as set forth by Midd–West. (*See id.*)

Midd–West claims that the requirements it places on its students reasonably advance its legitimate interests in (1) ensuring that its student athletes have the academic eligibility to play high school sports; (2) ensuring that its athletes meet its physical education requirements; (3) discouraging students from cutting class or taking unauthorized trips away from school during the school day; (4) encouraging students to maintain passing grades, and (5) promoting good citizenship. (Def.'s Reply Br. Supp., Rec. Doc. No. 23, at 11–12.) We are unwilling to say that the requirements placed upon Midd–West student athletes were not reasonably designed to serve the legitimate interests set forth by Midd–West. We find, then, that inasmuch as Midd–West's requirements governing participation in extracurricular

activities meet the "rational relationship" test, they are constitutional, and plaintiffs' equal protection claim must fail.

For the reasons set forth above, we will dismiss Count III of plaintiffs' complaint for failure to state a claim upon which relief may be granted.

### D. COUNT IV—VIOLATION OF PENNSYLVANIA SCHOOL CODE

■ In Count IV of their complaint, plaintiffs allege that Midd–West has violated the Pennsylvania Public School Code by setting "unreasonable, arbitrary and capricious requirements" upon Megan and by refusing to allow Megan to participate in interscholastic basketball and in open gym. (Compl., Rec. Doc. No. 1, at ¶ 45.) In its motion to dismiss, Midd–West contends that because Count IV of the complaint is a pendent state law claim, it should be dismissed along with plaintiffs' federal claims under 28 U.S.C. § 1367(c)(3). Alternatively, Midd–West asserts that because the claim in Count IV raises a number of novel and complex issues of Pennsylvania law and substantially predominates over plaintiffs' federal claims, we should decline to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §§ 1367(c)(1) and 1367(c)(2). We agree that we may decline to exercise supplemental jurisdiction over Count IV of plaintiffs' complaint either because we will dismiss all claims over which we have original jurisdiction, or because the claim raises a complex issue of state law which predominates over plaintiffs' federal claims. We will therefore dismiss Count IV.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court found that "if ... federal claims are dis-

missed before trial, ... the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Indeed, 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if it has "dismissed all claims over which it has original jurisdiction." Because we have dismissed all federal claims in the instant case, it is clear that we may decline to exercise supplemental jurisdiction over the state claim presented in Count IV.

A district court may also decline to exercise supplemental jurisdiction over a claim if it "raises a novel or complex issue of State law," 28 U.S.C. § 1367(c)(1), or if it "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). There is currently litigation pending in Pennsylvania courts relating to both WPCCS and its compliance with the Pennsylvania Public School Code and to the constitutionality of the portion of the Pennsylvania Public School Code that refers to charter schools. Clearly, then, any question regarding charter schools in Pennsylvania is a novel and/or complex issue of State law. Further, all of the federal claims in the instant case necessarily relate to Megan's status as a cyber charter school student, indicating that the charter school question predominates over the federal claims.

For the reasons set forth above, we will decline to exercise supplemental jurisdiction over Count IV of plaintiffs' complaint, and will therefore dismiss Count IV, without prejudice.

### CONCLUSION:

For the reasons set forth above, Midd–West's motion to dismiss plaintiffs' complaint will be granted. An appropriate order follows.

### ORDER

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. The motion to dismiss filed by defendant Midd–West School District (Rec. Doc. No. 7) is granted.

2. Counts I, II, and III of the complaint are dismissed with prejudice for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

3. Count IV of the complaint is dismissed without prejudice as the court declines to exercise supplemental jurisdiction over the state law claim which it sets forth.

4. The clerk is directed to close the case file.