729 F.2d 233
 34 Fair Empl.Prac.Cas. 178,
33 Empl. Prac. Dec. P 34,195
Carol A. WAITERS, Appellant,
v.
J.L.G. PARSONS, II, individually, and as Medical Center
Director, Veterans Administration Center, Coatesville,
Pennsylvania, and James R. Harris, M.D., individually, and
as Chief of Staff, Veterans Administration Center,
Coatesville, Pennsylvania, and The Veterans Administration, Appellees.
 No. 83-1214.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 15, 1983.
Decided Feb. 27, 1984.
As Amended March 2, 1984.
 
 Edward M. Kopanski (argued), Glenside, Pa., for appellant.
 Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Joseph M. Masiuk (argued), Asst. U.S. Attys., Philadelphia, Pa., for appellees.
 Before ADAMS, BECKER and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 This is an employment discrimination case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. The gravamen of the complaint is that appellant Carol A. Waiters was discharged from her position as a social worker at the Veterans Administration Medical Center, Coatesville, Pennsylvania ("VAMC"), allegedly in retaliation for having filed an informal EEOC complaint in 1978 and a formal EEOC complaint in 1979 against her superiors at VAMC, and for having testified in an EEOC proceeding brought by a fellow employee in 1981. This appeal is from a judgment of the district court dismissing the action on the grounds that appellant had failed to exhaust administrative remedies with respect to her discharge claim.
 
 
 2
 Under Title VII, a victim of discrimination may file a complaint in federal district court either (1) within thirty days of final action by the EEOC or the employing agency, or (2) after 180 days pass from the filing of the administrative complaint, if there is no final agency action. Where there is no final agency action, there is no limit on the time in which a suit may be filed in district court. 42 U.S.C. Sec. 2000e-16(c). While appellant did not pursue administrative remedies with respect to her discharge, a review of the record makes clear that her claim that she was discharged in retaliation for filing EEO charges falls within the scope of the EEOC investigation which arose out of her 1979 formal complaint, which also charged retaliation against appellant for asserting her rights under Title VII but on which there was no final agency action. A victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint. Since we conclude that appellant's current claim falls within the scope of the prior investigation, and that appellant would be entitled to sue on the complaint that led to that investigation, appellant was free to bring this suit without further exhausting her administrative remedies. We therefore reverse the judgment of the district court and remand for further proceedings.
 
 I.
 
 3
 Appellant was hired as a clinical social worker at VAMC in 1971.[1] She had been a federal employee since 1964. In March 1978, appellant filed an informal EEOC complaint against Joseph A. Armstrong, Chief of the Social Work Service at VAMC, alleging that the promotion of a male employee to a GS-11 position in a newly established intensive treatment ward discriminated against her on the basis of her sex. She withdrew the complaint after mediation, which resulted in her being given a position in the new program. Appellant felt, however, that she was a victim of continuing discrimination, primarily because VAMC was inhospitable to her ideas concerning education of medical students. Thus, on August 10, 1979, appellant filed a formal complaint with the EEOC alleging continuing discrimination in retaliation for her filing of the 1978 informal complaint.
 
 
 4
 After an investigation, the district director of the EEOC found that there was support for appellant's allegations,[2] and recommended that the VAMC official responsible be "admonished in writing," that all supervisory personnel at VAMC be given "[r]e-training and re-emphasis of EEO law, principles, procedures, and policy," and that VAMC "[c]ease and desist from committing any discriminatory act's [sic] against [appellant] for having filed a [sic] EEO complaint...." However, no further action was taken by the EEOC, appellant's complaint was never finally adjudicated by the agency, and no right to sue letter ever issued.
 
 
 5
 Subsequently, appellant became involved in an attempt to implement a program for Vietnam veterans at VAMC. Although the program proposal was never adopted, appellant became closely involved with many of the veterans and organizations working on their behalf. One of the veterans charged that appellant had made sexual advances toward him. These charges led to an investigation of appellant's conduct. On November 12, 1981, as a result of the investigation, appellant was notified of her proposed removal, based on numerous allegations of misconduct. Appellant, through her attorney, replied to the allegations in writing on December 11, 1981, and apparently appeared before appellee Parsons, VAMC's Medical Director, on December 14.[3] On December 23, 1981, Parsons wrote appellant notifying her of her discharge.[4]
 
 
 6
 Appellant did not thereupon pursue any administrative remedies before the EEOC or the Veterans Administration. Rather, on January 8, 1982, appellant filed a complaint in the District Court for the Eastern District of Pennsylvania under Title VII of the 1964 Civil Rights Act and under 42 U.S.C. Secs. 1981, 1983. The complaint alleged that her discharge was motivated by defendant's desire to retaliate against appellant for exercising her rights under Title VII. The complaint requested a temporary restraining order, which the district court denied. An amended complaint, based on the same allegations and requesting a preliminary injunction, reinstatement, and damages, was filed on January 14. After a hearing, the preliminary injunction was denied.[5]
 
 
 7
 Subsequently, appellant appealed her dismissal to the Merit Systems Protection Board ("MSPB"). The MSPB ordered the sanction reduced to a sixty-day suspension.[6] On February 28, 1983, the district court dismissed appellant's complaint on the grounds that she had failed to exhaust her administrative remedies.[7] This appeal followed.
 
 II.
 
 8
 The district court dismissed the present action on the grounds that there was no federal court jurisdiction because the plaintiff had not filed a complaint with the EEOC prior to bringing this action. After the district court ruled, the Supreme Court held that the timely filing of a complaint with the EEOC is not a jurisdictional prerequisite to bringing suit in federal court under Title VII. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392-98, 102 S.Ct. 1127, 1131-35, 71 L.Ed.2d 234 (1982). Standing alone, Zipes would require that we vacate the district court's decision and remand the case for reconsideration of whether the doctrines of waiver, estoppel, or tolling should be applied. We decline to base our decision solely on Zipes, however, because we find that there are alternative grounds fairly raised on this appeal that enable us to dispose of the appeal without requiring that the district court now determine whether the exhaustion requirement has been excused on one of the grounds referred to in Zipes.
 
 III.
 
 9
 In general, before filing a Title VII suit, a federal employee charging an employer with discrimination must file a complaint with the EEOC, and allow 180 days to pass during which the EEOC will attempt to resolve the dispute without resorting to litigation.[8] At the end of the 180 day period the employee is entitled to sue, regardless of the pendency of EEOC proceedings. The statute of limitations begins to run, however, only in the event that there is "final agency action." Final agency action can take the form of a "right to sue" letter, in which the agency states that it sees no reason to take action, or can consist of an agreement reached between the employing agency and the EEOC. See 42 U.S.C. Sec. 2000e-16.[9]
 
 
 10
 Where discriminatory actions continue after the filing of an EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period. This court has recognized this fact in permitting suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints and wait another 180 days to sue. See Hicks v. ABT Associates, 572 F.2d 960, 966 (3d Cir.1978); Ostapowicz v. Johnson, 541 F.2d 394, 399 (3d Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). See also Gupta v. East Texas State University, 654 F.2d 411 (5th Cir. Unit A 1981). The rationale behind these decisions is that once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed. This slim likelihood of successful conciliation does not justify forcing the victim to wait an additional 180 days to file suit. The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. See Hicks, 572 F.2d at 965-66; Ostapowicz, 541 F.2d at 398-99; Gamble v. Birmingham Southern Railroad Co., 514 F.2d 678, 689-90 (5th Cir.1975).[10]
 
 IV.
 
 11
 The appellant's formal complaint charged "retaliation" for the filing of her informal complaint a year earlier. Although the specific incident which was the basis of the formal complaint was the "restricted implementation of suggested proposals regarding education of medical students," the EEOC district director concluded that a pattern of events that occurred after the filing of the informal complaint demonstrated that officials at VAMC "retaliated" against appellant for filing the informal complaint.[11] The remedies recommended by the district director all focused on avoiding further discriminatory acts. The investigation clearly went beyond the specific problem alleged in the formal complaint, and found evidence of retaliatory intent in a pattern of actions by the official of VAMC.
 
 
 12
 Appellant alleges that her discharge was the product of this same retaliatory intent. The government responds that the different circumstances in this case--different officials are alleged to be responsible for the allegedly discriminatory acts, more than thirty months passed between the formal complaint and the discharge, and the alleged retaliatory acts are of a different nature--preclude us from holding that the claim based on the discharge is within the scope of the investigation that arose from the formal complaint. While it is true that the allegedly discriminatory officials and acts are different, the core grievance--retaliation--is the same and, at all events, it is clear that the allegations of the appellant's complaint fall within the scope of the district director's investigation of the charges contained in the 1979 formal complaint. Under these circumstances, the policy of promoting conciliation would not be furthered by allowing the defendants to delay having to answer in court for retaliatory action allegedly taken against appellant for asserting her rights. See Weise v. Syracuse University, 522 F.2d 397, 399, 412 (2d Cir.1975).
 
 
 13
 We hold that this suit is not barred by the requirement that a complainant exhaust administrative remedies before commencing legal action.[12] We will therefore reverse the judgment of the district court and remand for further proceedings.
 
 
 
 [1]
 The facts set forth herein are essentially uncontradicted
 
 
 [2]
 The district director's findings, in relevant part, were:
 Evidence gathered by the Commission in the form of sworn witness testimony shows that following complainants [sic] reassignment to the new position, complainant was subject to harassment by the A.D.O. [allegedly discriminatory official]. Witness testimony shows that the A.D.O. felt complainant questioned and contradicted him by pursuing the informal EEO complaint. Subsequent to the re-assignment to the position complainant sought, an effort was made to remove complainant from the Student Education Committee. The size of the committee was reduced from 8 to 7 members. The committee determined that complainant had the highest number of unexcused absences according to the administrative record. The complainant was identified as the member to be rotated off the committee for the year July 1, 1979 to June 30, 1980. Subsequently, a committee member resigned and complainant was allowed to stay. As a result of the harassment experienced by complainant, she was forced to by-pass the channeling process in an attempt to ensure that her proposals were received by appropriate individuals....
 Since the complainant was subjected to harassment after the informal EEO complaint was brought to the attention of the A.D.O., and since the agency offers no explanation which bears scrutiny for the differential treatment received by the complainant, it is reasonable to conclude that complainant was discriminated against because she opposed practices made unlawful by Title VII.
 
 
 [3]
 The record does not include any record of proceedings before the EEOC, VAMC, or the Merit Systems Review Board. A hearing scheduled for December 14 before Parsons is referred to by appellant's attorney in his December 11 letter
 
 
 [4]
 The reasons given for appellants' discharge were:
 
 
 [1]
 Violations of the privacy of patients, whose cases appellant allegedly discussed with a representative of a local Vietnam veterans organization
 
 
 [2]
 Refusal to testify before the V.A. investigatory panel
 
 
 [3]
 Making statements to persons outside the V.A. unfavorable to and "contrary to the best interests of" the V.A
 
 
 [4]
 A statement of a patient concerning the charges of sexual misconduct made against appellant by another patient
 
 
 [5]
 Various statements and conversations with patients involving sexual matters
 
 
 [6]
 "Unprofessional" conduct also involving sexually oriented conversations or physical contact with patients
 
 
 [5]
 The district court found that appellant would not suffer irreparable injury because her injury could be compensated by a backpay award, and that her likelihood of success on the merits "was somewhat remote." Waiters v. Parsons, No. 82-0088 (E.D.Pa. January 20, 1982)
 
 
 [6]
 In the wake of that order, this case involves only appellant's claim for backpay for the sixty-day suspension period, and her claim for counsel fees
 
 
 [7]
 Although the district court's order does not explain why the claims under 42 U.S.C. Secs. 1981 and 1983 were dismissed, we affirm that part of the order on the basis that, in the employment discrimination context, a federal employee's sole federal remedy is under Title VII. See Brown v. General Services Administration, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976)
 
 
 [8]
 In the case of an employer other than the federal government, a complaint must first be filed with the state agency charged with enforcing the laws against employment discrimination, if one exists. 42 U.S.C. Sec. 2000e-5(c) and (d)
 
 
 [9]
 After a federal employee has exhausted her remedies within the employing agency, she must file a complaint with the EEOC. The EEOC refers the complaint to a hearing examiner, who will hold an informal "pre-hearing conference" to attempt to settle the issue. If no agreement can be reached, the complaint proceeds to a formal, adversary hearing within the EEOC
 The statutory scheme reflects an attempt to balance the competing values of protecting the right of employees to nondiscriminatory treatment, and of avoiding the cost of litigation over discriminatory employment decisions that might be rectified by a consensual agreement. The favored means of resolving employment discrimination disputes is a mutually acceptable resolution, worked out informally under the aegis of the EEOC.
 
 
 [10]
 The Fifth Circuit has held that all claims of "retaliation" against a discrimination victim based on the filing of an EEOC complaint are "ancillary" to the original complaint, and that therefore no further EEOC complaint need be filed. Gupta, 654 F.2d at 413-14. We decline to adopt this per se rule
 
 
 [11]
 See supra note 2
 
 
 [12]
 The summary judgment cannot be affirmed on the alternative ground that there are no disputed issues of material fact. The unresolved issue in this case--the intent of the VAMC officials in discharging appellant--is particularly unsuitable for disposition on summary judgment